UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Vonzetta Sanders Shaw, | ) | Civil Action  No. 5:15-1842-RBH-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| Carolyn W. Colvin, Acting Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff, appearing through counsel, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act ("the Act"). For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further administrative proceedings.

I.    Relevant Background

A.    Procedural History

In April 2012, Plaintiff filed an application for DIB alleging a disability onset date of November 4, 2011. Tr. 165-66. After being denied both initially and on reconsideration, Tr. 68, 80, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Tr. 103-04. On July 18, 2013, ALJ Nicole S. Forbes-Schmitt conducted a hearing in Charleston, South Carolina, taking testimony from Plaintiff and from a vocational expert ("VE"). Tr. 34-67. The ALJ issued a decision on August 30, 2013, denying Plaintiff's claims. Tr. 18-28. Plaintiff requested review of the hearing decision. Tr. 15. The Appeals Council granted Plaintiff's request in a Notice of

Appeals Council Action dated November 10, 2014. Tr. 159-62. The Notice indicated that the Appeals Council found the ALJ's decision was not supported by substantial evidence because the decision "did not adequately address the opinions set forth in medical source statements dated December 18, 2011 (Exhibits 11F and 20F)." Tr. 159-60. The Appeals Council issued its own decision on March 4, 2015, adopting the ALJ's decision finding Plaintiff was not disabled and she was capable of returning to her past relevant work ("PRW"). Tr. 4-7. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on April 30, 2015. ECF No. 1.

B.     Plaintiff's Background

Plaintiff, born in April 1963, was 48 years old as of her alleged onset date of November 4, 2011. Tr. 226. She completed high school and was a certified phlebotomist. Tr. 41-42. Plaintiff's prior work history includes work as a data entry specialist, medical clerk/phlebotomist, and medical receptionist. Tr. 219. In her Disability Report Plaintiff indicated she stopped working on December 7, 2011, because of the following conditions: diabetic neuropathy; high blood pressure; lower back pain; stomach pains; sleep apnea; asthma; anxiety depression; and hyperthyroidism. Tr. 218.

C.     The Administrative Hearing

1.   Plaintiff's Testimony

Plaintiff and her counsel appeared at her administrative hearing held in Charleston, South Carolina on July 18, 2013. *See* Tr. 34-67. In his opening statement Plaintiff's counsel indicated that Plaintiff had a "long history of working for East Cooper Internal Medicine as a medical receptionist, medical phlebotomist, and general nursing assistant of all trades." Tr. 39. Counsel stated that the case was not a "listings case" and in October of the previous year Plaintiff underwent gastric bypass surgery thinking that if she lost the weight her symptoms would be

eliminated and she could return to work. Tr. 39-40. Counsel stated that "low back pain, her Diabetic neuropathy, her asthma, her sleep disorder, her colitis, and her reflux disease and her side effects from medicine, and depression are the impairments that prevent her from sustaining gainful employment." Tr. 39. Counsel stated that Plaintiff's obesity was a contributing factor "but the impairments are not related to that. Aggravated by weight, but not related." Tr. 40.

In response to questions from the ALJ Plaintiff testified that she was 50 years old and had a high school education. Tr. 41. Plaintiff testified that in 1998 she worked for Roper Hospital[1] at the blood bank and doing phlebotomy and medical records. *Id.* Plaintiff testified that she worked for over 15 years as a phlebotomist and was certified. Tr. 42. Plaintiff stated that Gear Alliance and Roper were the same place and that Low Country Medical Associates was also bought out by Roper. *Id.* Plaintiff stated in 2006 she worked for Life Sierra doing plasma work, which she testified is like phlebotomy. Tr. 42-43. Plaintiff testified that about eight years prior she worked as a receptionist at Roper in an internal medicine office, and in 2012 she worked briefly as a customer service representative in a debt collection agency. Tr. 43.

Plaintiff testified that she was with Roper over 25 years but due to her neuropathy and diabetes she could no longer do the work. Tr. 44. Plaintiff stated that she could not elevate her legs like she needed to and could not sit for eight hours and "that's when [her] depression started in." *Id.* Plaintiff testified she was first diagnosed with diabetes in 2004. Tr. 45. The ALJ noted that although Dr. Mills mentioned diabetic neuropathy in his notes, the ALJ did not see a diagnosis of neuropathy in the treatment records. The ALJ also noted that in November 2011 Plaintiff specifically denied having neuropathy. Tr. 45 (citing to Ex. 7F at page 26). Plaintiff stated that the diagnosis should be included in the records, she discussed symptoms related to neuropathy with Dr. Mills, and she had been prescribed Gabapentin for neuropathy. Tr. 45-46.

---

[1] Improperly identified in the transcript as "Broker Hospital." Tr. 41.

Plaintiff stated that the medication made her drowsy but it was prescribed for her to take at night. Tr. 46. Plaintiff testified that she was insulin dependent for almost a year and then was taken off insulin after her surgery. *Id.* Plaintiff stated that she still has "high numbers" and has to "get blood drawn a lot." *Id.* Plaintiff testified that she has problems sitting for a long time because of her "lower back pains" due to neuropathy. Tr. 46-47. The ALJ noted that an x-ray of Plaintiff's lower back appeared to be "unremarkable or normal" and a May 2013 MRI showed "small or mild problems." Tr. 47. Plaintiff stated that the doctors decided to treat her back problems conservatively as she did not want to go through another surgery because she could not afford it. *Id.* Plaintiff testified that she was "asthmatic" and had asthma since she was a child. Tr. 47-48. When asked if she had any asthma-related hospitalizations in the last two years, Plaintiff testified that in 2011 she was hospitalized for diabetes and was also treated for asthma. Tr. 48. Plaintiff stated that her asthma is aggravated by the weather, perfume, and colognes. Tr. 49. Plaintiff also testified that she has hypertension and is taking medicine to control it. Plaintiff stated she has sleep apnea and used a CPAP machine for a while but could no longer afford it. Plaintiff stated that she sleeps with a fan blowing on her face and that, along with a sleeping pill, helps her to sleep. *Id.* Plaintiff stated she had gastric bypass surgery in October 2012 because she "wanted to be off the medicines because they said it would help the medicines so [she] could get back to work." Tr. 49-50. Plaintiff stated she lost 30 pounds. Tr. 50. The ALJ noted Plaintiff had a family tragedy and her doctor indicated she was off her plan and "[t]here was some emotional eating and drinking of alcohol[.]" *Id.* Plaintiff indicated she was still finding it somewhat difficult to stick to the plan. Plaintiff testified she was five feet, two-and-a-half inches tall and her current weight was 183 pounds. *Id.* Plaintiff testified that Dr. Mills diagnosed her with depression about a year prior to the hearing and he also prescribed Celexa and Ativan for her. Tr. 50-51. Plaintiff testified that she did not require any mental health treatment from a doctor, but

while she was still working she saw a counselor, Dr. Spivey, once she was given a date for her bypass surgery. Tr. 51. Plaintiff stated that after he cleared her for surgery she asked him to continue as her doctor. Tr. 52. The ALJ asked counsel if he had any records from Dr. Spivey other than the evaluation and counsel indicated he had records for August 2012, November 2012, January 2013, and February 2013, but had inadvertently neglected to produce them. *Id.* The ALJ asked Plaintiff about problems related to colitis, reflux, or stomach issues. Tr. 53. Plaintiff stated that she was unaware that certain foods would cause her stomach to flare. She also stated that the doctor removed hernias during her bypass surgery and she takes Nexium for that. *Id.*

Plaintiff's counsel referred the ALJ to specific citations in the record related to Dr. Mills' assessments of neuropathy in 2013. Tr. 53-54. The ALJ asked if there was "anything besides the 2013 notes of neuropathy" and counsel indicated he did not know but would provide information to the ALJ in a follow-up memorandum.

In response to questions from her attorney Plaintiff testified that she tried to work for a debt collection company but it did not last long because she had to sit at a computer for 12 hours a day. Tr. 55-56. Plaintiff testified that she can sit for no more than 15 minutes. Tr. 56. Plaintiff also stated that Dr. Mills told her she should have her legs elevated "all the time" to prevent swelling. *Id.* She said that if they swell she gets "tingling under the feet" and she has to try to walk around and when she walks it "feels like [she's] walking on needles." *Id.* Plaintiff testified that she has been Dr. Mills' patient for over eight years and sees him every two to three months. Tr. 57. Plaintiff stated that she does not see him more often because she cannot afford it. *Id.* She testified that she used to work with Dr. Mills and because "he knew [her] situation" he would let her "come back" and get examined. *Id.*

Plaintiff testified that she has five grandchildren and "one on the way." Tr. 57. Plaintiff stated that she wished that she could "run around with them, but [she] can't and [she] cannot pick them up . . . because of [her] back." *Id.* Plaintiff stated that made her "more depressed." Tr. 58.

Plaintiff testified that because of "the shaking of [her] neuropathy in [her] fingers" she would have problems working as a phlebotomist and trying to draw blood. Tr. 58. Plaintiff stated that before she stopped working for East Cooper Internal Medicine she got sick. Plaintiff testified as follows: "My hypertension/blood level and everything was just whacked up or too high. And my neuropathy got really bad and back pains. And I couldn't charge through anything. And again I had to keep my feet elevated." *Id.* Plaintiff stated that Dr. Mills asked her come back to work and, because she was also his patient, he accommodated her so that she could work light duty. Tr. 59. Plaintiff testified that she had the gastric bypass surgery so that she could "lose some of these symptoms and it would get [her] off some of these medicines" so she could return to work, but the surgery "didn't work." *Id.* Plaintiff stated the bypass surgery did not help with her back pain or with the tingling and swelling in her legs and feet. *Id.* Plaintiff testified that she takes Oxycodone every six hours and it makes her "sleepy, dizzy, and [she] cannot operate any machines or anything." Tr. 60. Plaintiff stated she also takes the steroid Dexamethasone for her neuropathy and lower back pain which causes "dizziness, the sleepiness, and insomnia." Plaintiff stated she takes Restoral to help her sleep. *Id.* Plaintiff stated if she could eliminate one impairment it would be her "neuropathy and [her] back pain. They both linger together." Tr. 61. Plaintiff testified that she lived alone and she can clean but has to stop because of her asthma and back pain. *Id.*

### 2. The VE's Testimony

VE John Wilson also testified at the hearing. Tr. 34, 62-66. He characterized Plaintiff's past work as follows: medical receptionist, SVP 4, semi-skilled, sedentary, Dictionary of

Occupational Titles ("DOT") number 237.367-038; phlebotomist, SVP 3, semi-skilled, light, DOT number 079.364-022. Tr. 62-63. The ALJ posed the following hypothetical:

> Assume . . . a person of the claimant's age, education, past work you just described who has a medium residual functional capacity, but can never climb ladders, ropes or scaffolds. Can occasionally . . . kneel and crawl. This person must avoid concentrated exposures to fumes, dust, chemicals, nauseous odors, and poor ventilation. This person must also avoid work place hazardous [sic].

Tr. 63. The ALJ asked if, with those restrictions, could a person perform any of Plaintiff's past jobs and the VE responded affirmatively to both jobs. *Id.* The ALJ amended the hypothetical and asked the VE to:

> [A]ssume further that a person is limited to light residual functional capacity. They cannot lift and carry 20 pounds occasionally, 10 pounds frequently. They can sit, stand, and walk for six hours at a time, but would need liberal opportunity to alternate between those—between sitting and standing without leaving the work station. This person can frequently use foot controls bilaterally. This person can also perform frequently with fine and gross manipulations, but not constant frequence [sic] to the keyboard. And again avoiding environmental irritants and work place hazards.

Tr. 63-64. The ALJ asked if given the second hypothetical "could a person still perform either the claimant's past jobs?" Tr. 64. The VE responded affirmatively as to the phlebotomist job. *Id.*

Plaintiff's counsel asked the VE if a person who could only "look down flexion of their neck less than occasionally; that would be less than one-third of the day" do any of Plaintiff's past jobs. Tr. 65. Counsel clarified that the person would "have difficulty bending, looking down and either side ways, but looking down only rarely . . . . [t]hey could look up or sideways but not down." *Id.* The VE stated that "would eliminate both of those." *Id.* Counsel asked what the effect would be if an individual could only lift 10 pounds and the VE responded that limitation would eliminate the phlebotomist job. Tr. 64-65. Counsel asked the effect if the individual would have to constantly elevate their legs while sitting and the VE responded that limitation would also eliminate all jobs. Tr. 65. Counsel asked if all jobs would be eliminated if the person had to take frequent, unscheduled, short breaks of two-to-three minutes four or five times a day. The VE

responded: "Probably not." *Id.* Counsel asked if it would eliminate all jobs if the person were "unable to maintain the concentration in focus necessary to perform even simple work tasks occasionally or more" and the VE responded affirmatively. *Id.* Plaintiff's counsel had no further questions. Tr. 66.

II.    Discussion

A.    The ALJ's Findings

In her August 30, 2013 decision, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2.    The claimant has not engaged in substantial gainful activity since November 4, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.    The claimant has the following severe impairments: morbid obesity and non-insulin dependent diabetes mellitus with neuropathy (20 CFR 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she must be allowed liberal opportunity to alternate between sitting and standing at will, and can frequently but not constantly use her bilateral lower extremities for foot controls. She can frequently use her bilateral upper extremities for fine and gross manipulations, and must avoid environmental irritants such as fumes, dust, chemicals, noxious odors, and poor ventilation. Lastly, the claimant must avoid workplace hazards such as unprotected heights or dangerous, moving machinery.

6.    The claimant is capable of performing past relevant work as a phlebotomist. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.     The claimant has not been under a disability, as defined in the Social Security Act, from November 4, 2011, through the date of this decision (20 CFR 404.1520(f)).

Tr. 23-28.

B.     The Appeals Council's Findings

The Appeals Council granted Plaintiff's request for review of the ALJ's decision finding that the decision was not supported by substantial evidence. Tr. 159. In its March 4, 2015 decision, the Appeals Council made the following findings:

1.     The claimant met the special earnings requirements of the Act on November 4, 2011, the date the claimant stated she became unable to work and continues to meet them through December 31, 2016.

The claimant has not engaged in substantial gainful activity since November 4, 2011.

2.     The claimant has the following severe impairments: morbid obesity and non-insulin dependent diabetes mellitus with neuropathy, but does not have an impairment or combination of impairments which is listed in, or which is medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.

3.     The claimant's combination of impairments results in the following limitations on her ability to perform work-related activities: light work, but must be allowed liberal opportunity to alternate between sitting and standing at will, can frequently use her bilateral lower extremities for foot controls, frequently use her bilateral upper extremities for fine and gross manipulations, must avoid environmental irritants and workplace hazards.

4.     The claimant's subjective complaints are not fully credible for the reasons identified in the body of this decision.

5.     The limitations on the claimant's ability to perform work-related activities as set forth in Finding 3 do not preclude the performance of past relevant work as phlebotomist. Therefore, the claimant's combination of impairments does not preclude the performance of past relevant work (20 CFR 404.1520(e)).

6.     The claimant is not disabled as defined in the Social Security Act at any time through the date of the ALJ's decision (August 30, 2013).

Tr. 5-6.

C.     Legal Framework

1.  The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[4] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision

---

[4] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") which the Social Security Administration ("the Agency") considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at step three).

regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step). A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpt. P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen*, 482 U.S. at 146 n.5 (regarding burdens of proof).

2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *see also Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1973).

D.     Analysis

Plaintiff asserts that the final decision in this case was not made by the ALJ but was instead made by the Appeals Council and therefore "it is the Appeals Council's decision . . . that should be the object of judicial review." Pl.'s Br. 4, ECF No. 12. Plaintiff argues that (1) the Appeals Council failed to consider all of her impairments in combination, (2) the Appeals Council failed to comply with SSR 82-62, and (3) the Appeals Council failed to consider all the opinions and findings of her treating physician. Pl's Br. 4, 7-8.

1.   Consideration of Plaintiff's Combined Impairments

Plaintiff's first allegation of error is that "the Appeals Council found that the [ALJ's] decision was not supported by substantial evidence and, after setting aside the [ALJ's] decision, issued a new decision. In making their decision the Appeals Council failed to comply with the requirement to consider all impairments." Pl.'s Br. 5. Plaintiff asserts that while the Appeals

Council found that she had two severe impairments, "the Appeals Council [did] not explain why they did not find that Plaintiff had non-severe impairments. Neither did the Appeals Council state that they adopted or approved of the [ALJ's] findings that Plaintiff had numerous non-severe impairments." *Id.* at 6. Plaintiff specifically contends the Appeals Council erred in failing to discuss or explain the effects of her "back problems or her depression, either individually or in combination with the effects of her severe impairments" identified by the Appeals Council as obesity and non-insulin dependent diabetes with neuropathy. *Id.* at 7.

The Commissioner argues the Appeals Council did not "set[] aside" the ALJ's decision but adopted the ALJ's decision in full and specifically determined "that Plaintiff 'does not have an impairment or *combination of impairments*' that meets or equals a listing" and also concluded "that Plaintiff's '*combination of impairments* does not preclude the performance of past relevant work.'" Def.'s Br. 13-14, ECF No. 13 (emphasis in Def.'s Brief). In response Plaintiff disagrees with the Commissioner's statement that the Appeals Council adopted the ALJ's decision. Pl.'s Reply 1, ECF No. 14. "Plaintiff contends that the Appeals Council's [sic] cannot subsequently adopt the ALJ's decision that it previously found was not supported by substantial evidence" and objects to the assertion that the Appeals Council's decision was a "modification" of the ALJ's decision. *Id.* at 2. Plaintiff further contends that "[a]lthough the [ALJ] discussed Plaintiff's non-severe impairments, he made no mention and provided no explanation of the combined effects of Plaintiff's severe and non-severe impairments on her ability to work." *Id.* at 3-4.

a.  Consideration of Impairments by ALJ

When, as here, a claimant has more than one impairment, the statutory and regulatory scheme for making disability determinations, as interpreted by the Fourth Circuit, requires that the ALJ consider the combined effect of these impairments in determining the claimant's disability status. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Lemacks v. Astrue*, No. 8:07-

2438-RBH-BHH, 2008 WL 2510087 (D.S.C. May 29, 2008), *aff'd*, 2008 WL 2510040 (D.S.C. June 18, 2008); *cf. Reid v. Commissioner*, 769 F.3d 861, 866 (4th Cir. 2014) (finding Commissioner adequately considered plaintiff's impairments in combination based on the ALJ's "meticulous[]" discussion of whether plaintiff's three severe impairments would equal a listed impairment) (quoting *Walker* requirement of adequately explaining combined effects of impairments). Even if Plaintiffs impairments in and of themselves are not "listed impairments" that are considered disabling per se, the ALJ must also "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B) (2004). The ALJ must "consider the combined effect of a claimant's impairments and not fragmentize them." *Walker*, 889 F.2d at 50. "As a corollary, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Id.*

In this case the ALJ found that Plaintiff had the severe impairments of morbid obesity and non-insulin dependent diabetes mellitus with neuropathy, and the non-severe impairments of lumbar disc bulging and degenerative changes, asthma, hyperlipidemia, hypertension, GERD, obstructive sleep apnea, and depression. Tr. 23. At step three of her sequential evaluation, the ALJ noted that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity" of a listed impairment. Tr. 24. The ALJ considered whether Plaintiff's asthma met Listing 3.03 and considered Listing 9.00 as it related to Plaintiff's neuropathy. *Id.*

In her residual functional capacity ("RFC") analysis the ALJ discussed and considered the effect of each of Plaintiff's impairments on Plaintiff's ability to work. For each impairment the ALJ examined relevant evidence including treatment history and Plaintiff's testimony. Tr. 25-27. In the ALJ's discussion of Plaintiff's severe obesity she also included that there was "no

objective evidence showing that the claimant suffered from significant sleep apnea, continued heart disease, or uncontrollable blood pressure. The medical evidence fails to indicate that the claimant's ability to manipulate has been negatively impacted by the presence of adipose tissue." Tr. 26. The ALJ also considered Dr. Mills' opinions which noted that Plaintiff "suffered from chronic low back pain and diabetic peripheral neuropathy, which affected her ability to stand or sit for long periods of time" and that Plaintiff "suffered from depression and anxiety, and that as a result of her impairments, she would likely miss more than four days of work per month." Tr. 27.

### b. Consideration of Impairments by Appeals Council

When the Appeals Council makes a decision, it "may affirm, modify or reverse the [ALJ] hearing decision or it may adopt, modify or reject a recommended decision." 20 C.F.R. § 404.979. "If the Appeals Council issues its own decision, it will base its decision on the preponderance of the evidence." *Id.* "When the Appeals Council makes a decision, it will follow the same rules for considering opinion evidence as administrative law judges follow." 20 C.F.R. § 404.1527. Accordingly, "when the Appeals Council grants a request for review and issues its own decision, it must 'articulate . . . conclusions with respect thereto.' A failure to do so constitutes 'reversible error.'" *Meyer v. Astrue,* 662 F.3d 700, 706 n.2 (4th Cir. 2011) (alteration in original) (citations omitted).

In this case, the Appeals Council granted Plaintiff's request for review of the ALJ's hearing decision and considered all of the evidence, including the Council's notice of proposed action, arguments, and additional evidence identified in the Supplemental List of Exhibits attached to its decision. Tr. 4, 7. The Appeals Council then characterized its decision as one which "adopts the hearing decision's statements regarding the pertinent provisions of the Social Security Act, Social Security Administration Regulations, Social Security Rulings and

Acquiescence Rulings, the issues in the case, and the evidentiary facts, as applicable." Tr. 4. The Appeals Council also "adopt[ed] the hearing decision's findings or conclusions regarding whether the claimant is disabled." *Id.* Specifically, the Appeals Council stated it

> agrees with the hearing decision's findings under steps 1, 2, 3 and 4 of the sequential evaluation; namely, that the claimant has not engaged in substantial gainful activity since November 4, 2011, that the claimant has severe impairments which do not meet or equal in severity an impairment in the Listing of Impairments and that she is capable of performing past relevant work.

Tr. 4. The Appeals Council determined that the "hearing decision did not adequately address the opinions set forth in the medical source statements dated December 18, 2011" but the Council subsequently determined that "all of the opinions from Dr. Mills are unsupported by the record and are entitled to little weight." Tr. 5. The Appeals Council also adopted the ALJ's conclusions concerning Plaintiff's subjective complaints and the findings that Plaintiff has the RFC to perform light work and is capable for returning to her PRW as a phlebotomist. *Id.*

In addition to adopting the decision of the ALJ as noted above, the Appeals Council made its own findings. As it relates to consideration of Plaintiff's impairments in combination the Appeals Council determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing, Plaintiff's combination of impairments resulted in certain limitations in her ability to perform work-related activities, and Plaintiff's combination of impairments does not preclude the performance of PRW. Tr. 5-6.

A plain reading of the Appeals Council's decision reflects the thorough review and consideration given by it to the entire record and to the evidence, findings, and conclusions as set forth in the ALJ's decision. Plaintiff's allegation that the Appeals Council erred because it did "not consider the effects of Plaintiff's multiple non-severe impairments," Pl.'s Br. 7, does not conform with the Appeals Council's decision. The Council specifically adopted that portion of the ALJ's decision laying out Plaintiff's impairments and also made its own findings.

Accordingly, the undersigned recommends a finding that the Appeals Council did not fail to consider all of Plaintiff's impairments in combination based on its adoption and modification of the ALJ's findings.

### 2.  Analysis of Plaintiff's Ability to Perform PRW

Plaintiff also argues the "Appeals Council did not make a finding of fact as to the physical and mental demands of the Plaintiff's past phlebotomist work as required by [SSR] 82-62." Pl.'s Br. 7-8. The Commissioner contends that the "ALJ properly assessed whether Plaintiff could perform the requirements of her past relevant work as a phlebotomist" and the Appeals Council adopted those findings. Def.'s Br. 17-18. In reply Plaintiff asserts that "[w]ithout the specific finding as to the mental demands needed to perform the job of phlebotomist, a decision that Plaintiff is able to return to such a position cannot be found to be legally sufficient." Pl.'s Reply 4.

SSR 82–62 sets out the procedures the SSA uses at step four of the sequential evaluation process when determining whether the claimant's RFC permits her to return to her PRW. The ALJ must consider whether a claimant has the RFC to "meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy)," and, if the claimant can return to her PRW, she may be found to be not disabled. SSR 82–62, 1982 WL 31386, at *3. The ruling further provides:

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do PRW requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as

employers, the *Dictionary of Occupational Titles*, etc., on the requirements of the work as generally performed in the economy.

*Id.* SSR 82-62 further requires the following when the decision-maker determines that a claimant can meet the physical and mental demands of PRW:

> The rationale for a disability decision must be written so that a clear picture of the case can be obtained. The rationale must follow an orderly pattern and show clearly how specific evidence leads to a conclusion.
>
> * * *
>
> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
>
> 1. A finding of fact as to the individual's RFC.
>
> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
>
> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

*Id.* at *3–4.

Here, at step four, the ALJ made the following finding regarding Plaintiff's ability to return to her PRW:

> The claimant is capable of performing past relevant work as a phlebotomist. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> The undersigned finds that the claimant performed her work as a phlebotomist within 15 years prior to the time of adjudication of the claim, performed such work at substantial gainful activity levels, and performed such work for a time period sufficient to have learned the techniques, acquired information, and developed the facility needed for average performance in the job situation. See also Social Security Ruling 82-62 and testimony of claimant.
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed.

Tr. 28. "Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations. Detailed information

about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate." SSR 82-62, 1982 WL 31386, at *3. "In addition, for a claim involving a mental/emotional impairment, care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." *Id.*

Although the record contains Plaintiff's description of her PRW as a phlebotomist (*see* Work History Report, Tr. 230-34), nowhere in her decision does the ALJ discuss the physical or mental demands of that job. The ALJ's finding that Plaintiff could perform her PRW "as actually and generally performed" without discussing the physical and mental demands of Plaintiff's PRW, is insufficient to satisfy SSR 82–62. Accordingly, the undersigned finds that the ALJ's decision is deficient in that regard as it is not supported by substantial evidence and cannot be reviewed adequately by the court. The Appeals Council adopted the step four findings of the ALJ that Plaintiff could return to PRW as a phlebotomist. Tr. 4-5. The Appeals Council did not make any additional findings regarding the physical or mental demands of the job as required by SSR 82-62. Therefore, the Appeals Council's failure to appropriately articulate conclusions regarding this issue "constitutes 'reversible error.'" *Meyer v. Astrue,* 662 F.3d at 706 n.2. The undersigned recommends remand so that the proper findings may be made regarding the job demands of a phlebotomist and Plaintiff's ability to return to PRW.

### 3. Failure to Consider All of Dr. Mills' Opinions

Plaintiff also argues that the "[n]either the Appeals Council nor the [ALJ] discussed, evaluated or in any way noted that they had considered Dr. Mills' June 7, 2012 evaluation." Pl.'s Br. 9. The Commissioner asserts that the one-page questionnaire completed by Dr. Mills is

"merely duplicative of the other three opinions evaluated by the ALJ/Appeals Council, [and] it is entitled to little weight for the same reasons discussed by the ALJ and Appeals Council, and in any event, it does not even indicate that Plaintiff has severe mental limitations." Def.'s Br. 19.

On June 7, 2012, Dr. Richard Mills completed a questionnaire indicating Plaintiff's diagnosis of "Depression anxiety" for which she was prescribed Cymbalta, Celexa, and Gabapentin. Tr. 397. Dr. Mills indicated "no" in response to the question asking whether the medication helped Plaintiff's condition and "no" in response to the question asking if psychiatric care had been recommended. *Id.* With regard to Plaintiff's mental status, Dr. Mills circled the following responses: Orientation – "all"; Thought Process – "slowed"; Thought Content – "suspicious"; Mood/Affect – "worried/anxious"; Attention/Concentration – "adequate"; and Memory – "adequate." In response to the question asking if Plaintiff exhibited any work-related limitation in function due to the mental condition, Dr. Mills circled "obvious" from the choices of "None, Slight, Obvious, Serious, [or] Very Serious." *Id.* Dr. Mills did not provide any comments regarding this work-related limitation but noted Plaintiff was capable of managing her funds. *Id.*

 The undersigned agrees with the Commissioner that the June 2012 opinion is duplicative of other opinions by Dr. Mills that were reviewed by the Appeals Council. Both the ALJ and the Appeals Council noted Dr. Mills' opinion of May 1, 2012, that Plaintiff suffered from depression, was currently on antidepressants, had sought counseling in the past, and therefore could not work. Tr. 5, 27 (citing Ex. 5F/14F, Tr. 388, 474). They both also noted Dr. Mills' opinion of July 16, 2013, indicating that Plaintiff "suffered from depression and anxiety" and was incapable of tolerating "even low stress work." *Id.* (citing Ex. 30F, Tr. 576). Furthermore, the Appeals Council concluded its consideration of Dr. Mills' opinions by stating the following: "The Appeals Council finds that all of the opinions from Dr. Mills are unsupported by the record

and are entitled to little weight." Tr. 5. Even if the Appeals Council failed to consider the June 7, 2012 opinion of Dr. Mills, the undersigned recommends that the Council's error be deemed harmless. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (finding that where the same conclusion would have been reached notwithstanding the initial error, the error was harmless).

III. Conclusion and Recommendation

Pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions, it is recommended that the Commissioner's decision be reversed and remanded for further administrative action as detailed within, specifically as related to Plaintiff's ability to perform her PRW.

IT IS SO RECOMMENDED.

June 22, 2016                                             Kaymani D. West
Florence, South Carolina                                 United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**